TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-09-00477-CR






Hubert Theodore Branch, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT

NO. 62025, HONORABLE JOE CARROLL, JUDGE PRESIDING





D I S S E N T I N G O P I N I O N


 I agree with the majority's disposal of Branch's first two issues. I further agree with
the majority that the prosecutor's statement related to parole was improper and that Branch's attorney
should have objected to the statement. However, because I disagree that Branch has shown either
that his defense attorney was ineffective or that he was prejudiced as a result of his attorney's failure
to object, I must respectfully dissent.


Was counsel ineffective?

 A defendant receives ineffective assistance only if counsel's performance undermined
the trial process to such a degree that the defendant was denied a fair trial. Harrington v. Richter,
131 S.Ct. 770, 791 (2011). "The question is whether an attorney's representation amounted to
incompetence under 'prevailing professional norms,' not whether it deviated from best practices or
most common custom." Id. at 788 (quoting Strickland v. Washington, 466 U.S. 668, 690 (1984)).
In evaluating a claim of ineffective assistance, we should indulge "a 'strong presumption' that
counsel's representation was within the 'wide range' of reasonable professional assistance," and
remember that "'[s]urmounting Strickland's high bar is never an easy task.'" Id. at 787-88 (quoting
Strickland, 466 U.S. at 689; Padilla v. Kentucky, 130 S.Ct. 1473, 1485 (2010)). We must apply
Strickland's standards "with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity
of the very adversary process the right to counsel is meant to serve." Id. at 788 (quoting Strickland,
466 U.S. at 689-90). As the Supreme Court has observed, after receiving a guilty verdict, "even the
most experienced counsel may find it difficult to resist asking whether a different strategy might
have been better, and, in the course of that reflection, to magnify their own responsibility for an
unfavorable outcome." Id. at 790. We must apply an objective standard of reasonableness, however,
and not inquire into "counsel's subjective state of mind." Id. Although in rare cases a single error
may be "'sufficiently egregious and prejudicial'" to support a claim of ineffective assistance, "it is
difficult to establish ineffective assistance when counsel's overall performance indicates active and
capable advocacy." Id. at 791 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)). 

 Having reviewed the record of the entire proceeding, I believe counsel provided a
vigorous, active defense and that his one failure to object did not deny Branch a fair trial. See id. 
The majority states simply that because the prosecutor's argument went beyond that which would
be appropriate and because defense counsel did not state during the hearing on Branch's motion for
new trial that his failure to object was part of a specific strategy, Branch received ineffective
assistance. The test, however, is not whether Branch's attorney could or should have objected to the
prosecutor's statement, but whether that failing, in context of the totality of representation provided,
was so egregious and prejudicial that it effectively denied Branch a fair trial. See id. The Supreme
Court has cautioned that a defendant is not "guarantee[d] perfect representation,"and this one
isolated mistake, in light of the active and vigorous representation provided throughout the entire
trial, did not render counsel's performance so deficient as to rise to the level of ineffective assistance
of counsel. See id. I agree with the majority that Branch's attorney should have objected but do not
agree that his failure to object was an error of such magnitude that, by itself, rendered counsel's
performance so deficient that he "was not functioning as the 'counsel' guaranteed . . . by the Sixth
Amendment." Strickland, 466 U.S. at 687. I would hold that Branch did not receive ineffective
assistance of counsel. 


Was Branch prejudiced by counsel's error?

 Even if counsel's failure to object could be said to render his overall representation
ineffective, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside
the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691. 
Branch must do more than show that his attorney's error had "'some conceivable effect'" on the
outcome and instead must show the error was of such magnitude that Branch was deprived of a trial
with a reliable result. See Harrington, 131 S.Ct. at 787-88 (quoting Strickland, 466 U.S. at 693). 

 In other words:


In assessing prejudice under Strickland, the question is not whether a court can be
certain counsel's performance had no effect on the outcome or whether it is possible
a reasonable doubt might have been established if counsel acted differently. Instead,
Strickland asks whether it is "reasonably likely" the result would have been different. 
This does not require a showing that counsel's actions "more likely than not altered
the outcome," but the difference between Strickland's prejudice standard and a
more-probable-than-not standard is slight and matters "only in the rarest case." The
likelihood of a different result must be substantial, not just conceivable.


Id. at 791-92 (citations omitted, quoting Strickland, 466 U.S. at 693, 696-97).

 In examining whether a defendant made the necessary showing of prejudice, we are
to presume that the jury "acted according to law" and "reasonably, conscientiously, and impartially
appl[ied] the standards that govern the decision." Strickland, 466 U.S. at 694-95. We must consider
"the totality of the evidence" and should bear in mind that "a verdict or conclusion only weakly
supported by the record is more likely to have been affected by errors than one with overwhelming
record support." Id. at 695-96; see Wong v. Belmontes, 130 S.Ct. 383, 390 (2009) ("the reviewing
court must consider all the evidence--the good and the bad--when evaluating prejudice"). Thus,
for Branch to show prejudice in this case, he must show a reasonable probability that the jury would
have rejected a life sentence after weighing all of the evidence presented if it had not heard the
prosecutor's statements related to parole and good-time credits. See Wong, 130 S.Ct. at 386.

 During closing arguments on punishment, both the State and the defense referred to
parole and good-time credits. The State opened its argument by asking the jury to impose a life
sentence, preparing a chart showing what one-quarter of several terms of prison sentences would be,
and Branch's defense attorney argued against "warehousing" Branch for a long term and instead
argued for punishment that would allow Branch to get out of prison, return to work, and support
himself and his children. On rebuttal, the State referred to Branch's earlier prison sentence, asking
what the jury thought he had learned, saying, "You've heard about the 'quarter time'? What, a year,
a year-and-a-half? Year-and-a-quarter? The lesson is: I can make enough money. I'll do the year. 
I'll do the three-and-three-quarters. It's not that bad. Price of doing business." The prosecutor then
made the statements that are at issue in this case:


He's going to get out. You can see. You give him life, 15 years he's eligible for
parole. He is not going to stay in prison until he dies, and that 15 years, as you can
see in here, is tempered by how he's good. Okay? He's a good boy, he stays in
prison seven years, eight years. He's going to be done on life. Give him 30, give
him 40, he's going to get out quicker. . . . You're never--even with life--going to
send him to prison for 15 or 20 years.

 

 Even assuming that the prosecutor's statements were so improper that defense
counsel's failure to object rendered his overall assistance ineffective, Branch has not made the
required showing of prejudice. See Strickland, 466 U.S. at 687. In his brief, Branch's only argument
that can be interpreted as asserting prejudice is the observation that he was sentenced to life "on a
drug charge without a true habitual enhancement where no weapons were involved. The prosecutor
told the jury he would never be in jail as long as fifteen years even if they gave him life because of
the parole laws...and the jury gave him life." Assuming that those two sentences can be interpreted
as addressing the required prejudice prong, I do not believe that Branch has carried the burden of
proof imposed on him under Strickland, 466 U.S. at 694, and Harrington, 131 S.Ct. at 787-88.

 First, we must assume that the jury "reasonably, conscientiously, and impartially
appl[ied] the standards that govern[ed] the decision." Strickland, 466 U.S. at 695. This means we
should assume the jury followed the instructions in the charge. See Miles v. State, 204 S.W.3d 822,
827-28 (Tex. Crim. App. 2006) ("in the absence of evidence to the contrary, we will assume that the
jury followed its written instructions"); Luquis v. State, 72 S.W.3d 355, 366 (Tex. Crim. App. 2002)
("[w]e assume that the jury followed the instructions as given"); Hooper v. State, 255 S.W.3d 262,
271 (Tex. App.--Waco 2008, pet. ref'd) (in cases considering egregious harm related to parole and
good-conduct instructions, "[f]irst and foremost is the presumption that the jury followed the
charge's instructions"); Newton v. State, 168 S.W.3d 255, 259 (Tex. App.--Austin 2005, pet. ref'd)
("we assume in the absence of evidence to the contrary that the jurors followed the charge and that
they resolved the conflict between counsel's argument and the court's instructions (assuming they
perceived it) by giving precedence to the instructions and the accompanying verdict forms"). 

 The punishment charge correctly instructed the jury that a defendant may earn and
lose good-time credit and that a sentence might be reduced by parole. The charge further correctly
instructed that when a defendant is sentenced to prison, he becomes eligible for parole when his time
served plus good-time credit equals one-quarter of his sentence or thirty years, whichever is less. 
Finally, the charge cautioned that the effects of parole and good-time credit cannot be predicted and
instructed that the jury could consider the existence of parole and good-time credits but not how they
may apply to Branch in particular. Because the charge was correct and cautioned the jury not to
consider parole as it might apply to Branch, absent evidence to the contrary, we should presume that
the jury followed the instructions. See Hooper, 255 S.W.3d at 271-72; Newton, 168 S.W.3d at 259.

 Second, we should consider the question of prejudice in light of the entire
circumstances of the case. See Perez v. State, 310 S.W.3d 890, 893-94 (Tex. Crim. App. 2010). As
the majority mentions, Branch's nine-year-old son was with him in the car when Branch was stopped
and discovered to be carrying a large quantity of newly cooked crack cocaine. An infant was in
Branch's house with a babysitter, (1) and Officer Pergande testified that the babysitter was "very
nervous, fidgety, . . . couldn't sit still. Couldn't really carry on a conversation," all of which
Pergande testified were "quite common with people under the influence of crack cocaine or cocaine." 
When the police searched Branch's home, they found plastic containing cocaine residue on the floor
under a sofa in the living room, cocaine residue in the microwave in the kitchen and on the dining
room table, and "a quantity of powder cocaine, crack cocaine and marijuana" inside a pair of shoes
in a second living room. Two of the State's photographic exhibits showed that a baby's pacifier was
lying on top of the microwave in which cocaine residue was found, and in her closing argument
during the punishment phase, the prosecutor asserted that the infant had probably eaten food
"infected with the residue of the poison" Branch had left in the microwave and that the older child
probably used the table on which cocaine residue was found.

 The majority concludes that because the jury assessed life, there was prejudice. I
would consider all of the evidence, including evidence that Branch cooked crack cocaine in the same
microwave apparently used by his family; handled cocaine on the family's dining room table; was
driving his son to his sister's house while carrying a substantial and deliverable quantity of drugs;
and had been convicted, placed on probation, and eventually sentenced to five years in prison upon
revocation of his probation for the same offense. I also note the brevity of the statements with which
the majority takes issue, in light of the entirety of the closing arguments, and the fact that most of
the State's arguments related to probation and good-time credits were in accordance with the law. 
See Taylor v. State, 233 S.W.3d 356, 359 (Tex. Crim. App. 2007) (not improper for State to
accurately restate law on probation as provided by jury charge). Finally, I would also note that
Branch has not presented substantive argument of how he was prejudiced. Considering the overall
quality of representation Branch received and the entirety of the evidence presented, Branch has not
carried his burden of showing that we should not have confidence in the sentence, see Strickland,
466 U.S. at 694-95, and that there is a reasonable probability that the sentence would have been
different had counsel objected to the prosecutor's statements, see Perez, 310 S.W.3d at 894. 


Conclusion

 In its analysis of Branch's issue, the majority has committed two errors. First, the
majority has essentially stated that anytime a defense attorney fails to object to the State's
misstatements related to probation, the attorney commits professional malpractice and ceases
functioning as counsel. See Harrington, 131 S.Ct. at 787. Compounding that error, the majority has
neglected to view the evidence as a whole as required. See Perez, 310 S.W.3d at 894. I would
affirm the jury's life sentence and overrule Branch's final issue on appeal.


 ___________________________________________

 David Puryear, Justice

Before Justices Puryear, Pemberton and Henson

Filed: March 18, 2011

Publish
1. Branch's sister testified that she and Branch shared custody of the infant, who was
approximately five months old at the time. Neither she nor Branch are the child's parent, and Child
Protective Services had placed the baby with Branch and his sister "because the mother had some
other homeless legal problems." Branch's sister has since been given sole custody of the child.