**Reginald HOOPER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–04–00265–CR.**

Court of Appeals of Texas,
Waco.

March 12, 2008.

---

Albert J. Charanza, Jr., Lufkin, for appellant.

Clyde M. Herrington, Angelina County Dist. Atty., Lufkin, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION ON REMAND

BILL VANCE, Justice.

Appellant Reginald Hooper raises three issues challenging his conviction as a party to the aggravated assault of a public servant and his thirty-year sentence with a deadly-weapon finding. On original submission, a majority found that the evidence was legally insufficient, reversed the conviction, and rendered a judgment of acquittal. *Hooper v. State*, 170 S.W.3d 736 (Tex. App.-Waco 2005, pet. granted). The Court of Criminal Appeals remanded the case for reconsideration on the basis that the majority opinion incorrectly applied the legal sufficiency standard. *Hooper v. State*, 214 S.W.3d 9 (Tex.Crim.App.2007).

We thoroughly set forth the evidence on original submission.[1] *See Hooper*, 170 S.W.3d at 738–41. Thus, we limit our discussion on remand to the evidence directly pertinent to the issues before us.

### Legal Sufficiency

■ We begin again with Hooper's third issue, which complains of the legal sufficiency of the evidence to support his conviction as a party to the offense of aggravated assault. When reviewing a challenge to the legal sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our duty is to determine if the finding of the trier of fact is rational by viewing all of the evidence admitted at trial in the light most favorable to the verdict. *Adelman v. State*, 828 S.W.2d 418, 422 (Tex.Crim.App.1992). In doing so, any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim.App.2000). When the record supports conflicting inferences, we presume that the trier of fact resolved the conflicts in favor of the State and defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App.2007).

In reviewing the sufficiency of the evidence, we should look at "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Cordova v. State*, 698 S.W.2d 107, 111 (Tex.Crim.App. 1985). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *See Johnson v. State*, 871 S.W.2d 183, 186 (Tex.Crim.App.1993) ("[i]t is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances."); *Barnes v. State*, 876 S.W.2d 316, 321 (Tex.Crim. App.1994); *Alexander v. State*, 740 S.W.2d 749, 758 (Tex.Crim.App.1987). Circumstantial evidence is as probative as direct evidence in establishing the

---

1. In our opinion on original submission, we relied largely on *Tippitt v. State,* 41 S.W.3d

316 (Tex.App.-Fort Worth 2001, no pet.).

guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Guevara [v. State,* 152 S.W.3d 45, 49 (Tex.Crim.App.2004) ]. On appeal, the same standard of review is used for both circumstantial and direct evidence cases. *Id.*

. . .

Under *Jackson v. Virginia,* courts of appeals assessing legal sufficiency are to consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Jackson,* 443 U.S. at 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560; *Powell [v. State,* 194 S.W.3d 503, 506 (Tex.Crim.App.2006) ]; *Guevara,* 152 S.W.3d at 49.

. . .

Under the Jackson test, we permit juries to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. However, juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions.

. . .

[C]ourts of appeals should adhere to the *Jackson* standard and determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.

*Hooper,* 214 S.W.3d at 13, 15–17.

Hooper was convicted of being a party to the offense of aggravated assault of a public servant. A person commits the offense of aggravated assault of a public servant if the person intentionally or knowingly threatens another with imminent bodily injury and the person uses or exhibits a deadly weapon during the commission of the offense, and the offense is committed against a person who the actor knows is a public servant while the public servant is lawfully discharging an official duty. Tex. Pen. Code Ann. §§ 22.01(a)(2), 22.02(a)(2), (b)(2) (Vernon Supp.2007).

Under the law of parties, a person may be convicted as a party to an offense if the offense is committed by his own conduct or by the conduct of another for which he is criminally responsible. Tex. Pen. Code Ann. § 7.01(a) (Vernon 2003). A person may be criminally responsible for another's conduct in two ways: (1) by being a "party" to the offense under subsection 7.02(a);[2] or (2) by being part of a conspiracy to commit a felony under subsection 7.02(b). *See id.* § 7.02(a), (b).

To find Hooper guilty as part of a conspiracy, the jury must have found beyond a reasonable doubt that: (1) Hooper and the co-conspirators engaged in an attempt to carry out a conspiracy to commit aggravated robbery or another felony, (2) in that attempt, one of the co-conspirators committed aggravated assault of a public servant, (3) the aggravated assault was committed in furtherance of the aggravated robbery or other felony conspiracy, and (4) the aggravated assault was an offense that should have been anticipated as a result of carrying out the conspiracy. *Hooper,* 214 S.W.3d at 14 n. 4. "Conspiracy" is an agreement between two or more persons,

**2.** Subsection 7.02(a)(2) provides that a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Tex. Pen. Code Ann. § 7.02(a)(2); *see Vodochodsky v. State,* 158 S.W.3d 502, 509 (Tex.Crim.App.2005).

with intent that a felony be committed, that they, or one or more of them, engage in conduct that would constitute the offense. Tex. Pen. Code Ann. § 15.02(a). An agreement constituting a conspiracy may be inferred from acts of the parties. *Id.* § 15.02(b).

Because the application paragraph charged the jury only on Hooper's party status as part of a conspiracy to commit aggravated robbery, we will limit our analysis to that theory.

In finding Hooper guilty of aggravated assault of a public servant, the jury concluded that in facilitating a conspiracy to commit robbery, Hooper should have anticipated Nicholson's aggravated assault of Shewmake during the getaway. The State's theory at trial and on appeal is that Hooper was the driver of the getaway car at the robbery.

Viewing the evidence in the light most favorable to the verdict, we find that Hooper's driving the getaway car when he was pulled over by Shewmake—approximately thirty minutes after the robbery—is circumstantial evidence or allows an inference that Hooper was driving the getaway car at the scene of the robbery. A rational juror could infer that Hooper, as the getaway car driver, knew that Austin and Nicholson were going to rob the store and that they were armed. That Nicholson and Austin were lying down in the getaway car with guns while Shewmake was following Hooper is circumstantial evidence that Hooper knew that they were trying to avoid detection and capture. Additionally, when Nicholson was captured, he gave law enforcement information that Austin was armed and did not intend on being taken alive. While being followed by Shewmake, Hooper stopped the car and Nicholson and Austin got out, with Nicholson firing a shot at Shewmake. Hooper immediately surrendered and cooperated with Shewmake, but a rational juror could infer that he did so not because he had not been involved in the robbery and getaway, but because he did not want to risk being injured or killed by Shewmake during Nicholson's and Austin's flight from capture.

From all of this evidence and these inferences—which the Court of Criminal Appeals says can be stacked upon each other—a rational juror could infer that Hooper conspired to commit aggravated robbery and that Hooper should have anticipated Nicholson's aggravated assault of Shewmake during the getaway. *See Hooper,* 214 S.W.3d at 15–16. We thus hold that these multiple reasonable inferences, when considered with the combined and cumulative force of the direct and circumstantial evidence, is legally sufficient and that a rational juror could find, beyond a reasonable doubt, that Hooper was guilty as a party to aggravated assault of a public servant under the conspiracy theory of party liability.[3] *See, e.g., Clayton,* 235 S.W.3d at 779–82; *Cunningham v. State,* 982 S.W.2d 513, 519–20 (Tex.App.-San Antonio 1998, pet. ref'd). Hooper's third issue is overruled.

### Factual Sufficiency

Hooper's second issue complains of the factual sufficiency of the evidence. In a factual sufficiency review, we ask whether a neutral review of all the evidence, though legally sufficient, demonstrates either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the factfinder's verdict clearly wrong and

---

**3.** With the aggravated assault of Shewmake being committed in furtherance of the conspiracy and one that should have been anticipated as a result of the conspiracy. *See* Tex. Pen. Code Ann. § 7.02(b); *Ford v. State,* 507 S.W.2d 735, 736 (Tex.Crim.App.1974); *see also Tippitt,* 41 S.W.3d at 324–25.

manifestly unjust. *Watson v. State,* 204 S.W.3d 404, 414–15 (Tex.Crim.App.2006); *Johnson v. State,* 23 S.W.3d 1, 11 (Tex. Crim.App.2000). "The court reviews the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compares it with the evidence that tends to disprove that fact." *Johnson,* 23 S.W.3d at 7 (quoting *Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim.App.1996)). The appellate court "looks at all the evidence on both sides and then makes a predominantly intuitive judgment. . . ." *Id.* (quoting William Powers and Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Texas L. Rev. 515, 519 (1991)). The nature of a factual sufficiency review authorizes an appellate court, although to a very limited degree, to act as the so-called "thirteenth juror" to review the factfinder's weighing of the evidence and disagree with the factfinder's determination. *Watson,* 204 S.W.3d at 416–17.

In this case, because no direct evidence placed Hooper at the scene of the robbery, a rational juror could infer that Hooper, unaware of the robbery, joined Austin and Nicholson after the robbery. Also, a rational juror could infer from Hooper's stopping the car and his immediate surrender to and cooperation with Shewmake that Hooper had not been involved in the robbery. But when the record supports conflicting inferences (detailed above in our legal sufficiency discussion), we presume that the trier of fact resolved the conflicts in favor of the State and defer to that determination. *Clayton,* 235 S.W.3d at 778.

Our neutral review of all the evidence does not demonstrate either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the jury's verdict clearly wrong and manifestly unjust. We find that the jury was justified in finding Hooper guilty. *See Watson,* 204 S.W.3d at 415. We overrule the second issue.

## Charge Error

■ Hooper's first issue complains of the trial court's deadly-weapon finding and error in the punishment charge, which reads in pertinent part:

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off *the period of incarceration* imposed through the award of *good conduct time.* Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is *also* possible that the length of time for which the defendant will be imprisoned *might be reduced by the award of parole.*

Under the law applicable in this case, if the defendant is sentenced to a term of *imprisonment,* he will not become eligible for parole until the *actual time served equals one-fourth of the sentence imposed or 15 years,* whichever is less, *without consideration of any good conduct time he may earn.* Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the

extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant. [Emphases added].

While the trial court was reading this charge to the jury, the following occurred:

Under the law applicable in this case, if the Defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served—

Let's approach the bench.

THE COURT: Shouldn't that be one-third—yes, it should okay I'll just correct it. One more thing. And this is a 3(g) offense. This has got to be 30 years.

Okay. Let me read that paragraph over. Under the law applicable in this case, if the Defendant is sentenced to a term of imprisonment, he will not become eligible for parole *until the actual time served plus any good conduct time* earned equals *one-third of the sentence imposed or 30 years,* whichever is less. Eligibility for parole does not guarantee that parole will be granted. [Emphases added].

After argument had concluded, the trial court attempted another correction:

Ladies and gentlemen, I need to reread probably about one page because I counseled with them, and we jumped to a conclusion that was wrong. We thought the charge was wrong. The charge is right, but I want to make sure that you understand it.

The trial court then re-read the charge paragraphs on good-conduct time and parole eligibility, including:

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligi-

ble for parole *until the actual time served equals one-fourth of the sentence imposed or 15 years,* whichever is less, without consideration of any good conduct time he may earn. [Emphasis added].

Hooper argues, and the State agrees, that this portion of the punishment charge was erroneous because the trial court was required to and did enter a deadly-weapon finding in the judgment. If the judgment contains an affirmative deadly-weapon finding under Section 3g(a)(2) of Article 42.12, the trial court is to charge the jury in writing as follows, in pertinent part:

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole *until the actual time served equals one-half of the sentence imposed or 30 years,* whichever is less, *without consideration of any good conduct time he may earn.* If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (Vernon Supp.2007) (emphases added); *see Parker v. State,* 119 S.W.3d 350, 358–59 (Tex.App.-Waco 2004, pet. ref'd).

*Deadly–Weapon Finding*

■ Hooper asserts that because the trial court did not give the correct jury instruction for a deadly-weapon case, one curative measure would be the deletion of the deadly-weapon finding from the judgment.

The indictment charged Hooper as a principal actor in the aggravated assault of Shewmake with a deadly weapon (a firearm). The guilt-innocence charge instructed the jury on aggravated assault of a public servant, aggravated robbery with

a deadly weapon (a firearm), and the law of parties (both party and conspiracy). The application paragraph charged the jury on the aggravated assault of Shewmake with a firearm by Nicholson or Austin as being committed in furtherance of the aggravated robbery conspiracy and one that Hooper should have anticipated as a result of carrying out the conspiracy. The jury found Hooper "guilty of the offense of aggravated assault of a public servant as alleged in the indictment."

In 1977, the Legislature amended Article 42.12 to provide, in appropriate cases, for the affirmative finding of the use or exhibition of a deadly weapon. Such a finding could be made if it was shown by the evidence "that the defendant used or exhibited a deadly weapon ... during the commission of a felony offense or during immediate flight therefrom." Act of May 30, 1977, 65th Leg., R.S., ch. 347, 1977 Tex. Gen. Laws 925, 926. Upon making such a finding, the trial court was instructed to "enter the finding in the judgment of the court." *Id.* After the 1977 amendment, trial courts routinely entered affirmative findings in appropriate cases, but an issue soon arose regarding the propriety of entering an affirmative finding in cases where the defendant was convicted as a party.

The Court of Criminal Appeals addressed the issue and held:

> We find that the phrase "the defendant used or exhibited a deadly weapon" implies that the defendant, himself, use or exhibit a deadly weapon during the commission of a felony or flight therefrom. When a defendant is a party ... to the use or exhibition of a deadly weapon, there must be a specific finding by the trier of facts that the defendant himself used or exhibited the deadly weapon.

*Travelstead v. State,* 693 S.W.2d 400, 402 (Tex.Crim.App.1985); *see also Flores v. State,* 690 S.W.2d 281, 283 (Tex.Crim.App. 1985). Appellate courts thus held that when a defendant was convicted as a party, an affirmative finding of a deadly weapon must be supported by evidence and a finding that the defendant *himself* used or exhibited the weapon. *See, e.g., Ray v. State,* 764 S.W.2d 406, 414 (Tex.App.-Houston [14th Dist.] 1988, pet. ref'd). The Legislature effectively overruled *Travelstead* in 1991 by amending Article 42.12 to provide for an affirmative finding of a deadly weapon if "the defendant used or exhibited a deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited." Act of May 25, 1991, 72nd Leg., R.S., ch. 541, 1991 Tex. Gen. Laws 1876. Some disagreement among the courts of appeals existed over the extent that *Travelstead* was overruled. *See Johnson v. State,* 6 S.W.3d 709, 714–15 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd). That disagreement apparently has been resolved. *See Sarmiento v. State,* 93 S.W.3d 566, 570 (Tex. App.-Houston [14th Dist.] 2002, pet. ref'd); *see also Lafleur v. State,* 106 S.W.3d 91 (Tex.Crim.App.2003).[4]

Section 3g(a)(2) of Article 42.12 requires that, when there is an "affirmative finding" by the fact-finder that during the offense, "the defendant used or exhibited [a] deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited," the trial court must enter that finding in the judgment, and if the deadly weapon is a firearm, that fact shall also be entered. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (Vernon Supp.2007) ("On an affirmative finding under this subdivision, the trial court shall

---

4. Judge Keller contends that the 1991 amendment to Article 42.12 did not completely abrogate *Travelstead. See Lafleur,* 106 S.W.3d at 100 (Keller, P.J., concurring).

enter the finding in the judgment of the court. On an affirmative finding that the deadly weapon was a firearm, the court shall enter that finding in its judgment."); *Parker*, 119 S.W.3d at 358. Thus, in this case the trial court was required to and did enter a deadly-weapon (handgun) finding in Hooper's judgment. *See Parker*, 119 S.W.3d at 359 (under application paragraph and verdict, jury necessarily found that defendant was a party and knew that a deadly weapon would be used or exhibited).[5] Hooper has not shown how the deadly-weapon finding resulted from the jury instruction error, and we find no basis for deleting the deadly-weapon finding in this case.

*Parole and Good–Conduct Instructions*

 Hooper did not object to the trial court's erroneous instruction. An unpreserved complaint about charge error is reviewed for "egregious harm." *Almanza v. State*, 686 S.W.2d 157, 171–72 (Tex. Crim.App.1985) (op. on reh'g). This standard applies to erroneous parole and good-conduct instructions. *Igo v. State*, 210 S.W.3d 645, 647 (Tex.Crim.App.2006); *Jimenez v. State*, 32 S.W.3d 233, 235–39 (Tex.Crim.App.2000). Egregious harm is a difficult standard that is determined on a case-by-case basis. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex.Crim.App.2002). Errors that result in egregious harm are

those that affect "the very basis of the case," deprive the defendant of a "valuable right," or "vitally affect a defensive theory." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex.Crim.App.1996) (citing *Almanza*, 686 S.W.2d at 172). The harm to Hooper must be actual, not just theoretical. *Almanza*, 686 S.W.2d at 174. In deciding whether egregious harm exists, we look at (1) the charge itself, (2) the state of the evidence, including contested issues, (3) the arguments of counsel, and (4) any other relevant information revealed by the record of the trial as a whole. *Hutch*, 922 S.W.2d at 171. Hooper seeks a new punishment hearing for this error.

The required deadly-weapon finding mandated that the jury be charged that Hooper would not become eligible for parole until the actual time served equals the lesser of one-half of the sentence imposed or 30 years, *without consideration of any good conduct time*, and that if he were sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. The erroneous charge instructed the jury that Hooper would not become eligible for parole *until the actual time served equals one-fourth of the sentence imposed or 15 years*, whichever is less, without consideration of any good conduct time he may earn. It also omitted that if Hooper were sentenced to a term of less than four years, he must

---

5. In *Parker*, we stated:

When a jury is the finder of fact, the trial court's determination of whether there is an "affirmative finding" by the jury is not made by the trial court's reviewing the evidence to discern what the jury found. *Lafleur v. State*, 106 S.W.3d 91, 95 (Tex.Crim. App.2003) (involving conviction for a lesser-included offense). Rather, the "affirmative finding" may take any of the following forms: (1) the indictment includes an allegation of a "deadly weapon," and the verdict states the defendant is guilty as charged in the indictment, (2) the indictment does not allege "deadly weapon," but

does allege a weapon that is per se a deadly weapon, and the verdict states the defendant is guilty as charged in the indictment, or (3) the jury has affirmatively answered a special charge issue on "deadly weapon" use or exhibition. *Id.*; *Polk [v. State*, 693 S.W.2d 391, 396 (Tex.Crim.App.1985) ]. Alternatively, if the application paragraph of the charge adequately describes the use or exhibition of a deadly weapon, then the verdict of "guilty" combined with the application paragraph constitute the "affirmative finding." *Lafleur*, 106 S.W.3d at 98.

*Parker*, 119 S.W.3d at 358.

serve at least two years before he is eligible for parole.[6]

Hooper's argument that egregious harm exists is that, based on the erroneous instruction given, the jury, in assessing a thirty-year sentence, thought that Hooper would have to serve at least one-fourth, or seven and one-half years, but because of the deadly-weapon finding in the judgment, he actually must serve at least one-half, or fifteen years. As a result, Hooper reasons, he must actually serve at least seven and one-half more years than the jury intended he serve.

The purpose of subsection 4(a) of Article 37.07, the instruction correctly applicable to Hooper, has been described as follows:

> The statutory parole charge instructs a jury in very general terms about the existence and possible grant of parole. It explicitly informs the jury that persons such as appellant are ineligible for release on parole until they have served one-half of their sentence or thirty years, whichever is less. The instruction also refers to the concept of "good conduct time" and states that a person sentenced to prison might earn some reduction in his period of incarceration (though not a reduction of his sentence) through the discretionary award of good conduct time. The final two paragraphs of the instruction clearly warn the jury that neither they, nor anyone else, can accurately predict how the concepts of "good conduct time" or parole might be applied to any particular person and thus they may not consider how those concepts might apply to the defendant. Thus, the over-all purpose of the instruction is to inform jurors of these concepts as a general proposition, but to prohibit the jury from using its notions

of parole or "good conduct time" in any calculus in assessing the appropriate punishment.

*Luquis v. State,* 72 S.W.3d 355, 360 (Tex. Crim.App.2002) (footnote omitted); *see also Parker,* 119 S.W.3d at 355–57 (discussing subsection 4(a), good-time credit, and its role in, and the distinction between, mandatory supervision and parole); *Bui v. State,* 68 S.W.3d 830, 838–41 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (en banc) (same); *Felan v. State,* 44 S.W.3d 249, 255–57 (Tex.App.-Fort Worth 2001, pet. ref'd) (same).

Numerous cases have addressed egregious harm in the context of a punishment charge containing errors and omissions in the parole and good-conduct instructions. Several common threads run among those cases. First and foremost is the presumption that the jury followed the charge's instructions. *See Luquis,* 72 S.W.3d at 366; *Parker,* 119 S.W.3d at 357; *Newman v. State,* 49 S.W.3d 577, 581 (Tex.App.-Beaumont 2001, pet. ref'd). Thus, we presume that the jury followed the trial court's instructions and did not consider parole: "However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant." *See Shavers v. State,* 985 S.W.2d 284, 291 (Tex. App.-Beaumont 1999, pet. ref'd); *Williams v. State,* 975 S.W.2d 375, 378 (Tex.App.-Waco 1998, pet. ref'd). Absent evidence or indications to the contrary, this presumption prevails. *Shavers,* 985 S.W.2d at 291; *Love v. State,* 909 S.W.2d 930, 935 (Tex. App.-El Paso 1995, pet. ref'd); *Clayton v.*

---

**6.** Because Hooper was not eligible for a four-year sentence, he could not have been harmed by this omission. *See Stewart v. State,* 198

S.W.3d 60, 65 (Tex.App.-Fort Worth 2006, no pet.).

*State,* 767 S.W.2d 504, 506 (Tex.App.-Amarillo 1989, pet. ref'd).

When there is a note from the jury regarding parole or good-conduct time, courts are more prone to find egregious harm. *See, e.g., Villarreal v. State,* 205 S.W.3d 103, 107–10 (Tex.App.-Texarkana 2006, pet. dism'd); *Rogers v. State,* 38 S.W.3d 725, 728–29 (Tex.App.-Texarkana 2001, pet. ref'd); *Ramos v. State,* 831 S.W.2d 10, 17–18 (Tex.App.-El Paso 1992, pet. ref'd). Another factor is the State's emphasis in argument on the possibility of parole. *See, e.g., Rogers,* 38 S.W.3d at 730. And courts also sometimes consider the assessment of a high or maximum sentence. *See, e.g., Villarreal,* 205 S.W.3d at 109–10; *Rogers,* 38 S.W.3d at 730.

Courts generally agree that the parole instruction was designed to favor the State and to increase sentences. *See Arnold v. State,* 786 S.W.2d 295, 300 (Tex.Crim.App. 1990); *Williams,* 975 S.W.2d at 378; *Myres v. State,* 866 S.W.2d 673, 674 (Tex. App.-Houston [1st Dist.] 1993, pet. ref'd); *Grigsby v. State,* 833 S.W.2d 573, 576 (Tex. App.-Dallas 1992, pet. ref'd). But it can help the defendant because the jury could learn that the defendant would serve longer than it expected and could be influenced to assess less time. *Williams,* 975 S.W.2d at 378 (citing *Myres,* 866 S.W.2d at 674).

We find one case most similar to Hooper's. In *Igo,* the jury was erroneously instructed that the defendant would not become eligible for parole until the actual time served, plus good time, equaled one-fourth of the sentence imposed, but the jury should have been instructed that he would not become eligible for parole until the actual time served, without considering good time, equaled one-half of the sentence imposed. *Igo,* 210 S.W.3d at 646. Egregious harm was not found:

First, the parole instruction contained the standard curative language admon-

ishing the jury not to consider the extent to which the parole law might be applied to the defendant. Second, parole was not mentioned by either counsel during argument on punishment. And finally, the evidence relating to punishment was exceptionally strong.

*Id.* at 647.

In this case, there is no indication that the jury improperly considered the effect of parole or good-conduct time. The range of punishment was five to 99 years or life, and the thirty-year sentence is not extreme, given Hooper's two prior felony convictions for possession of cocaine and possession of cocaine with intent to deliver. The State commented on the prior convictions in argument, but it did not mention the parole instructions.

And while the trial court's two failed attempts to correct the erroneous parole and good-conduct instructions may have highlighted the parole issue, there is no reasonable likelihood that the trial court's errors caused the jury to calculate the sentence from the parole instructions. *See Newman,* 49 S.W.3d at 582. There was no indication that the jury did not follow the instruction to not consider the extent to which parole or good-conduct time may affect Hooper. We can acknowledge by speculation that the jury may have calculated that Hooper would have to serve seven and one-half years before he could be released. *See Luquis,* 72 S.W.3d at 368 (Johnson, J., concurring) ("It is human nature to wonder how parole impacts the length of incarceration."). But such speculation leads only to insufficient theoretical harm, rather than actual harm. *Almanza,* 686 S.W.2d at 174; *Curry v. State,* 222 S.W.3d 745, 753 (Tex.App.-Waco 2007, pet. ref'd).

Considering the record as a whole, we hold that the erroneous parole and good-

conduct instruction did not prevent Hooper from receiving a fair and impartial trial or cause egregious harm. *See Williams*, 975 S.W.2d at 378; *Green*, 839 S.W.2d at 946. We overrule his first issue.

## Conclusion

Having overruled all of Hooper's issues, we affirm the trial court's judgment.

Chief Justice GRAY concurs in the judgment without a separate opinion.