# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00477-CR

**Hubert Theodore Branch, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT NO. 62025, HONORABLE JOE CARROLL, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

I agree with the majority's disposal of Branch's first two issues. I further agree with the majority that the prosecutor's statement related to parole was improper and that Branch's attorney should have objected to the statement. However, because I disagree that Branch has shown either that his defense attorney was ineffective or that he was prejudiced as a result of his attorney's failure to object, I must respectfully dissent.

### *Was counsel ineffective?*

A defendant receives ineffective assistance only if counsel's performance undermined the trial process to such a degree that the defendant was denied a fair trial. *Harrington v. Richter*, 131 S.Ct. 770, 791 (2011). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* at 788 (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)).

In evaluating a claim of ineffective assistance, we should indulge "a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance," and remember that "'[s]urmounting *Strickland*'s high bar is never an easy task.'" *Id.* at 787-88 (quoting *Strickland*, 466 U.S. at 689; *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)). We must apply *Strickland*'s standards "with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve." *Id.* at 788 (quoting *Strickland*, 466 U.S. at 689-90). As the Supreme Court has observed, after receiving a guilty verdict, "even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome." *Id.* at 790. We must apply an objective standard of reasonableness, however, and not inquire into "counsel's subjective state of mind." *Id.* Although in rare cases a single error may be "'sufficiently egregious and prejudicial'" to support a claim of ineffective assistance, "it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Id.* at 791 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

Having reviewed the record of the entire proceeding, I believe counsel provided a vigorous, active defense and that his one failure to object did not deny Branch a fair trial. *See id.* The majority states simply that because the prosecutor's argument went beyond that which would be appropriate and because defense counsel did not state during the hearing on Branch's motion for new trial that his failure to object was part of a specific strategy, Branch received ineffective assistance. The test, however, is not whether Branch's attorney could or should have objected to the prosecutor's statement, but whether that failing, in context of the totality of representation provided,

2

was so egregious and prejudicial that it effectively denied Branch a fair trial. *See id.* The Supreme Court has cautioned that a defendant is not "guarantee[d] perfect representation,"and this one isolated mistake, in light of the active and vigorous representation provided throughout the entire trial, did not render counsel's performance so deficient as to rise to the level of ineffective assistance of counsel. *See id.* I agree with the majority that Branch's attorney should have objected but do not agree that his failure to object was an error of such magnitude that, by itself, rendered counsel's performance so deficient that he "was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. I would hold that Branch did not receive ineffective assistance of counsel.

### Was Branch prejudiced by counsel's error?

Even if counsel's failure to object could be said to render his overall representation ineffective, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Branch must do more than show that his attorney's error had "'some conceivable effect'" on the outcome and instead must show the error was of such magnitude that Branch was deprived of a trial with a reliable result. *See Harrington*, 131 S.Ct. at 787-88 (quoting *Strickland*, 466 U.S. at 693).

In other words:

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland*'s prejudice standard and a

> more-probable-than-not standard is slight and matters "only in the rarest case." The likelihood of a different result must be substantial, not just conceivable.

*Id.* at 791-92 (citations omitted, quoting *Strickland*, 466 U.S. at 693, 696-97).

In examining whether a defendant made the necessary showing of prejudice, we are to presume that the jury "acted according to law" and "reasonably, conscientiously, and impartially appl[ied] the standards that govern the decision." *Strickland*, 466 U.S. at 694-95. We must consider "the totality of the evidence" and should bear in mind that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 695-96; *see Wong v. Belmontes*, 130 S.Ct. 383, 390 (2009) ("the reviewing court must consider all the evidence—the good and the bad—when evaluating prejudice"). Thus, for Branch to show prejudice in this case, he must show a reasonable probability that the jury would have rejected a life sentence after weighing all of the evidence presented if it had not heard the prosecutor's statements related to parole and good-time credits. *See Wong*, 130 S.Ct. at 386.

During closing arguments on punishment, both the State and the defense referred to parole and good-time credits. The State opened its argument by asking the jury to impose a life sentence, preparing a chart showing what one-quarter of several terms of prison sentences would be, and Branch's defense attorney argued against "warehousing" Branch for a long term and instead argued for punishment that would allow Branch to get out of prison, return to work, and support himself and his children. On rebuttal, the State referred to Branch's earlier prison sentence, asking what the jury thought he had learned, saying, "You've heard about the 'quarter time'? What, a year, a year-and-a-half? Year-and-a-quarter? The lesson is: I can make enough money. I'll do the year.

4

I'll do the three-and-three-quarters. It's not that bad. Price of doing business." The prosecutor then made the statements that are at issue in this case:

> He's going to get out. You can see. You give him life, 15 years he's eligible for parole. He is not going to stay in prison until he dies, and that 15 years, as you can see in here, is tempered by how he's good. Okay? He's a good boy, he stays in prison seven years, eight years. He's going to be done on life. Give him 30, give him 40, he's going to get out quicker. . . . You're never—even with life—going to send him to prison for 15 or 20 years.

Even assuming that the prosecutor's statements were so improper that defense counsel's failure to object rendered his overall assistance ineffective, Branch has not made the required showing of prejudice. *See Strickland*, 466 U.S. at 687. In his brief, Branch's only argument that can be interpreted as asserting prejudice is the observation that he was sentenced to life "on a drug charge without a true habitual enhancement where no weapons were involved. The prosecutor told the jury he would never be in jail as long as fifteen years even if they gave him life because of the parole laws...and the jury gave him life." Assuming that those two sentences can be interpreted as addressing the required prejudice prong, I do not believe that Branch has carried the burden of proof imposed on him under *Strickland*, 466 U.S. at 694, and *Harrington*, 131 S.Ct. at 787-88.

First, we must assume that the jury "reasonably, conscientiously, and impartially appl[ied] the standards that govern[ed] the decision." *Strickland*, 466 U.S. at 695. This means we should assume the jury followed the instructions in the charge. *See Miles v. State*, 204 S.W.3d 822, 827-28 (Tex. Crim. App. 2006) ("in the absence of evidence to the contrary, we will assume that the jury followed its written instructions"); *Luquis v. State*, 72 S.W.3d 355, 366 (Tex. Crim. App. 2002) ("[w]e assume that the jury followed the instructions as given"); *Hooper v. State*, 255 S.W.3d 262,

5

271 (Tex. App.—Waco 2008, pet. ref'd) (in cases considering egregious harm related to parole and good-conduct instructions, "[f]irst and foremost is the presumption that the jury followed the charge's instructions"); *Newton v. State*, 168 S.W.3d 255, 259 (Tex. App.—Austin 2005, pet. ref'd) ("we assume in the absence of evidence to the contrary that the jurors followed the charge and that they resolved the conflict between counsel's argument and the court's instructions (assuming they perceived it) by giving precedence to the instructions and the accompanying verdict forms").

The punishment charge correctly instructed the jury that a defendant may earn and lose good-time credit and that a sentence might be reduced by parole. The charge further correctly instructed that when a defendant is sentenced to prison, he becomes eligible for parole when his time served plus good-time credit equals one-quarter of his sentence or thirty years, whichever is less. Finally, the charge cautioned that the effects of parole and good-time credit cannot be predicted and instructed that the jury could consider the existence of parole and good-time credits but not how they may apply to Branch in particular. Because the charge was correct and cautioned the jury not to consider parole as it might apply to Branch, absent evidence to the contrary, we should presume that the jury followed the instructions. *See Hooper*, 255 S.W.3d at 271-72; *Newton*, 168 S.W.3d at 259.

Second, we should consider the question of prejudice in light of the entire circumstances of the case. *See Perez v. State*, 310 S.W.3d 890, 893-94 (Tex. Crim. App. 2010). As the majority mentions, Branch's nine-year-old son was with him in the car when Branch was stopped and discovered to be carrying a large quantity of newly cooked crack cocaine. An infant was in Branch's house with a babysitter,[1] and Officer Pergande testified that the babysitter was "very

---

[1] Branch's sister testified that she and Branch shared custody of the infant, who was approximately five months old at the time. Neither she nor Branch are the child's parent, and Child

6

nervous, fidgety, . . . couldn't sit still. Couldn't really carry on a conversation," all of which Pergande testified were "quite common with people under the influence of crack cocaine or cocaine." When the police searched Branch's home, they found plastic containing cocaine residue on the floor under a sofa in the living room, cocaine residue in the microwave in the kitchen and on the dining room table, and "a quantity of powder cocaine, crack cocaine and marijuana" inside a pair of shoes in a second living room. Two of the State's photographic exhibits showed that a baby's pacifier was lying on top of the microwave in which cocaine residue was found, and in her closing argument during the punishment phase, the prosecutor asserted that the infant had probably eaten food "infected with the residue of the poison" Branch had left in the microwave and that the older child probably used the table on which cocaine residue was found.

The majority concludes that because the jury assessed life, there was prejudice. I would consider all of the evidence, including evidence that Branch cooked crack cocaine in the same microwave apparently used by his family; handled cocaine on the family's dining room table; was driving his son to his sister's house while carrying a substantial and deliverable quantity of drugs; and had been convicted, placed on probation, and eventually sentenced to five years in prison upon revocation of his probation for the same offense. I also note the brevity of the statements with which the majority takes issue, in light of the entirety of the closing arguments, and the fact that most of the State's arguments related to probation and good-time credits were in accordance with the law. *See Taylor v. State*, 233 S.W.3d 356, 359 (Tex. Crim. App. 2007) (not improper for State to accurately restate law on probation as provided by jury charge). Finally, I would also note that

Protective Services had placed the baby with Branch and his sister "because the mother had some other homeless legal problems." Branch's sister has since been given sole custody of the child.

7

Branch has not presented substantive argument of how he was prejudiced. Considering the overall quality of representation Branch received and the entirety of the evidence presented, Branch has not carried his burden of showing that we should not have confidence in the sentence, *see Strickland*, 466 U.S. at 694-95, and that there is a reasonable probability that the sentence would have been different had counsel objected to the prosecutor's statements, *see Perez*, 310 S.W.3d at 894.

## Conclusion

In its analysis of Branch's issue, the majority has committed two errors. First, the majority has essentially stated that anytime a defense attorney fails to object to the State's misstatements related to probation, the attorney commits professional malpractice and ceases functioning as counsel. *See Harrington*, 131 S.Ct. at 787. Compounding that error, the majority has neglected to view the evidence as a whole as required. *See Perez*, 310 S.W.3d at 894. I would affirm the jury's life sentence and overrule Branch's final issue on appeal.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton and Henson

Filed:   March 18, 2011

Publish