IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00307-CR

 

Everett Eugene Turner,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 54th District
Court

McLennan County, Texas

Trial Court No. 2009-305-C2

 



MEMORANDUM  Opinion



 

Appellant Everett Eugene Turner pleaded
guilty to the offenses of burglary of a habitation and felon in possession of a
firearm.  See Tex. Penal Code
Ann. §§ 30.02, 46.04 (Vernon 2011).  He elected to have the jury assess
his punishment and was sentenced to twenty and five years’ imprisonment,
respectively.  This appeal ensued.

In his first issue, Turner contends that
the trial court erred in giving the parole law instruction required by article
37.07, section 4(a) of the Code of Criminal Procedure in the punishment
charge.  Turner complains
that the instruction
language concerning “good conduct time” is misleading because it improperly
implies that a person may be released from prison early without any parole
solely due to accruing good conduct time.

Because Turner did not object
to the charge on this basis, error will not result in reversal of his
conviction in the absence of “egregioius harm.”  Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on
reh’g)).  In examining the record for egregious harm, we consider the entire
jury charge, the state of the evidence, the final arguments of the parties, and
any other relevant information revealed by the record of the trial as a whole. 
Olivas v. State, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006).  Jury
charge error is egregiously harmful if it affects the very basis of the case,
deprives the defendant of a valuable right, or vitally affects a defensive theory. 
Stuhler
v. State, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); Sanchez v.
State, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

There is a presumption that the jury
followed the charge’s instructions.  See
Luquis v. State, 72
S.W.3d 355, 366 (Tex. Crim. App. 2002); Hooper v. State, 255 S.W.3d 262,
271 (Tex. App.—Waco 2008, pet. ref’d).  Thus, we presume that the jury followed
the trial court’s instructions and did not consider parole:  “However, you are
not to consider the extent to which good conduct time may be awarded to or
forfeited by this particular defendant.  You are not to consider the manner in
which the parole law may be applied to this particular defendant.”  See
Hooper, 255 S.W.3d at 271.  Absent evidence or indications to the contrary,
this presumption prevails.  Id. at 271-72.

Turner has not demonstrated a reasonable
likelihood that the jury was, in fact, misled or that it assessed a higher
sentence based upon any misconstruction of the parole law charge.  Nothing in
the record suggests that the jury discussed, considered or tried to apply
(despite the judicial admonition not to apply) what they were told about
good conduct time and parole.  Neither the prosecutor nor defense attorney
discussed good conduct time or parole in argument or urged the jury to assess a
greater (or lesser) sentence based upon good conduct time or parole.  The jury
did not send out any notes indicating or expressing confusion about the
possible application of good conduct time or parole to Turner.  Although Turner
received the maximum sentence of incarceration for the burglary offense, the
jury did not assess any fines and only assessed half the maximum sentence for
the offense of felon in
possession of a firearm.  See
Luquis, 72 S.W.3d at
366-68; Hooper, 255 S.W.3d at 272.

Thus, assuming without deciding that the
trial court erred, we conclude that any alleged error did not result in egregious
harm.  We overrule Turner’s first issue.

In his second issue, Turner contends
that the trial court erred by instructing the jurors in the punishment charge
that they should not let “sympathy” affect their deliberations or verdict.  We
have previously decided this issue against Turner’s position and see no
occasion to revisit our ruling.  See Wilson v. State, 267 S.W.3d 215,
219-20 (Tex. App.—Waco 2008, pet. ref’d) (citing Saffle v. Parks, 494
U.S. 484, 489, 110 S.Ct. 1257, 1260-61, 108 L.Ed.2d 415 (1990) (holding that
jurors need not “be allowed to base the sentencing decision upon the sympathy
they feel for the defendant after hearing his mitigating evidence”)).  We
overrule Turner’s second issue.

Having overruled both Turner’s issues,
we affirm the trial court’s judgment.

 

REX D. DAVIS

Justice

 

Before
Chief Justice Gray,

Justice Davis, and

Justice Scoggins

Affirmed

Opinion
delivered and filed August 3, 2011 

Do
not publish

[CR25]






e="text-align: justify; line-height: 0.388889in">      Dawkins, who testified in his defense, stated on direct examination: "I told [Diane], I said,
well, can I get some gas out of your car? And she said yes. And I said -- I asked her, do you
have a can and a hose? And she said no, there is one right there beside the trailer and there is my
car right here, you're welcome to siphon some gas. I siphoned that gas. It was her vehicle." On
cross-examination, Dawkins testified, "And I asked, you know, I asked, I said may I have some
gas to get back to town so I can get to Houston? She said yes, can is right there, find a hose. .
. . Gallon is all it took anyway. I asked for permission. "
      For purpose of analysis, we will assume that the court should have sustained the objection and
proceed to a harm analysis of the evidence.


 See Tex. R. App. P. 81(b)(2); Harris v. State, 790
S.W.2d 568 (Tex. Crim. App. 1989). In Harris, the Court of Criminal Appeals articulated the
standard we are to use to determine if an error is harmful. See Harris, 790 S.W.2d at 587-88. 
We are not to focus on the weight of the evidence which supports the jury's conclusion. See id.
at 587. Instead, we "first, isolate the error and all its effects, using the considerations set out
[below] and any other considerations suggested by the facts of an individual case; and second, ask
whether a rational trier of fact might have reached a different result if the error and its effects had
not resulted." See id. at 588. To isolate the error we "examine the source of the error, the nature
of the error, whether or to what extent it was emphasized by the State, and its probable collateral
implications . . . how much weight a juror would probably place upon the error, [and] whether
declaring the error harmless would encourage the State to repeat it with impunity." See id. at 587. 
      The error occurred during the direct examination of two of the State's eyewitnesses. The
contents of the erroneously admitted testimony referred to Dawkins' desire for fuel for his car,
but none of the State's witnesses indicated that he was going to steal the gasoline. In fact, the only
mention of a criminal implication to the testimony came from Dawkins during cross-examination
of Mary, when his attorney asked, "Ya'll are worried about the gasoline; isn't that right? To use
an old expression, I don't know if you have ever heard it, Kentucky credit card? Anyway, siphon
gas?" The defense repeated this implication in closing arguments by saying, "Quite frankly, [if]
roles were reversed and you were sitting there, [thinking] somebody is out there with a Kentucky
credit card and maybe boost a little gasoline, you would be kind of apprehensive about your
vehicle, too." The State did not imply either in direct examination of its witness, cross-examination of Dawkins, or in its closing argument that Dawkins intended to steal the gasoline. 
We do not believe that a juror would place much weight on the fact that Dawkins needed gasoline
to get to a local filling station. Additionally, Dawkins confirmed the truth of the statements
attributed to Diane during his testimony. Finally, in this context, declaring this error harmless
would not encourage the State to repeat the error, mainly because the determination of the hearsay
nature of testimony is fact intensive and the principles surrounding hearsay and its exceptions are
well known among trial attorneys. 
      We conclude beyond a reasonable doubt that the erroneous admission of the hearsay testimony
did not contribute to Dawkins' conviction. See id. at 588. Because the court assessed his
punishment, we also conclude beyond a reasonable doubt that the error did not contribute to his
sentence. See id. Points one and two are overruled.
      The judgment is affirmed.
 
                                                                                 BOB L. THOMAS
                                                                                 Chief Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed April 27, 1994
Do not publish