

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00319-CR

STEVEN BISHOP                                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

### FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

A jury found Appellant Steven Bishop guilty as charged in the indictment of felony assault on a family or household member, having been previously convicted of assault against a family member. *See* Tex. Penal Code Ann. § 22.01(b) (West 2011). In four points, Bishop argues that the trial court erred by failing to instruct the jury on the proper use of his stipulation to his prior assault-

----

[1] *See* Tex. R. App. P. 47.4.

family violence conviction and by giving an incorrect parole law instruction and that he suffered egregious harm from those charge errors. Because the record does not demonstrate egregious harm related to either of his jury-charge complaints, we will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Bishop and Tammy Vaughn were in a relationship. One day while the two were at a laundromat, Tammy received a cell phone call from a male friend, Gabe. Bishop became angry, started yelling, and grabbed Tammy's arms and neck. Gabe called Tammy's brother Billy and told him about the incident; Gabe said he had overheard Tammy screaming for help, gasping for air, and begging Bishop to stop. Gabe told Billy that Bishop had choked Tammy until she had passed out.

Billy, along with his friend and his friend's girlfriend, went to the apartment complex where Tammy and Bishop lived. Billy saw Tammy and Bishop in Bishop's truck; Tammy was crying and looked terrified, and Bishop was holding on to her shirt. Bishop got out of the car, and he and Billy began fighting. Billy told Tammy to get in his vehicle, Tammy complied, and Billy got in his vehicle and drove off. Tammy was shaking and crying, and she told Billy that Bishop had choked her until she had passed out. Billy saw red marks on Tammy's neck.

Denton Police were dispatched to the scene, and Bishop told police that he and Tammy had been in an argument and that Tammy had left with some other people. Denton Police Officer Lori Luce pulled over Billy's car, and spoke to

2

Tammy, Billy, and the other two passengers individually. Tammy was very upset and told Officer Luce that Bishop had put his hand around her neck, had choked her, and had pushed her against a wall and that she had lost her breath as a result. Officer Luce saw red marks on Tammy's neck consistent with finger marks. Tammy demonstrated to Officer Luce how Bishop had choked her.

Tammy's mother and sister arrived at some point, and Tammy told her sister that Bishop had choked her. Tammy's sister also saw red marks on Tammy's neck and collarbone. Tammy agreed to go to the police station to provide a statement and to have photographs taken of her neck. She rode with her mother and sister. When they arrived at the station, Tammy's level of cooperation had changed. She agreed to have photographs taken, but she refused to make a written statement because she feared what Bishop would do.

Several days after the incident, the Denton County District Attorney's Office received a letter, purportedly written by Tammy but actually written by Bishop, stating that he had not touched her and that he was a "good man." The letter stated that Tammy's red spots were from "stressing over the yelling" and that Tammy had "over-reacted."

About a month after the incident, Tammy signed an affidavit of nonprosecution, stating that the verbal statement she had given police was false and that Bishop had never touched her. Tammy also sent an email to the district attorney's office requesting that the charges against Bishop be dismissed.

Prior to trial, someone using Bishop's name and pin number made a call from jail to Tammy. Investigator Christie Perry with the Denton County District Attorney's office listened to a recording of the call and heard the caller tell Tammy that "they ain't got shit" and could not convict him without her testimony. Tammy later told Investigator Perry that nothing had happened between her and Bishop on the date in question.

On the day of Bishop's trial, Tammy was shaking and crying. She told Investigator Perry that she did not want to testify because "she's scared to death as to what could happen if [Bishop] doesn't get convicted."

At trial, the State offered into evidence Bishop's stipulation to his prior assault-family violence conviction. Bishop did not object to the evidence or request a limiting instruction, and the trial court admitted the stipulation into evidence. The trial court's charge on guilt/innocence instructed the jury to find Bishop guilty of felony assault if it found that he

> intentionally, knowingly, or recklessly cause[d] bodily injury to Tammy Bryant, a member of the defendant's family or household by grabbing, choking and strangling Tammy Bryant with defendant's hand, as alleged in the indictment, and if [it] further [found] from the evidence beyond a reasonable doubt that the defendant, previously thereto, had been convicted of the offense of assault against a member of the defendant's family or household under Section 22.01, Penal Code, in that on the 20th day of May, 2005, in cause number CR-2004-02307-A, styled "The State of Texas vs. Steven Bishop" on the docket of the County Criminal Court No. 1 of Denton County, Texas.

4

The court's charge on guilt/innocence did not reference Bishop's stipulation to his prior assault-family violence. Bishop made no objections to the charge. The jury found him guilty.

Bishop pleaded true to the two prior felony sentence enhancements, which increased his punishment range to twenty-five to ninety-nine years' or life imprisonment.[2] The jury assessed Bishop's punishment at eighty years' imprisonment. The trial court sentenced him accordingly.

### III. STANDARD OF REVIEW

In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *See Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994); *see also Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009). If error occurred, we then evaluate whether sufficient harm resulted from the error to require reversal. *Abdnor*, 871 S.W.2d at 731–32.

If there is error in the court's charge but the appellant did not preserve it at trial, we must decide whether the error was so egregious and created such harm that the appellant did not have a fair and impartial trial—in short, that "egregious harm" has occurred. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006); *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

---

[2]*See* Tex. Penal Code Ann. § 12.42(d) (West Supp. 2011) (providing for such increased punishment upon showing two prior felony convictions).

Egregious harm "'is a difficult standard to prove and such a determination must be done on a case-by-case basis.'" *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011) (quoting *Hutch*, 922 S.W.2d at 171). In making an egregious harm determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see generally Hutch*, 922 S.W.2d at 172–74. Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490 (citing *Almanza,* 686 S.W.2d at 172). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

## IV. ANY ERROR IN NOT INSTRUCTING JURY ON STIPULATION DID NOT CAUSE EGREGIOUS HARM

In his first two points, Bishop argues that the trial court erred by failing to sua sponte instruct the jury that his stipulation to his prior assault conviction could only be used to invoke the jurisdiction of the court, not as evidence of his guilt of the instant offense. Bishop did not object to the alleged charge error, but he argues on appeal that he suffered egregious harm from the error.

6

Bishop was charged with the third-degree felony of assault-family violence. An assault on a family member is a class A misdemeanor, but that same offense is enhanced to a third-degree felony when "it is shown on the trial of the offense that the defendant has been previously convicted of an offense under this chapter, Chapter 19, or Section 20.03, 20.04, 21.11, or 25.11 against a [family member]." Tex. Penal Code Ann. § 22.01(b)(2)(A) (West 2011). The family assault provisions mirror the enhancement provisions provided for repeat DWI offenders. *See id.* § 49.09(b) (West Supp. 2011).

A jury charge must distinctly set forth the law applicable to the case and set out all of the essential elements of the offense. *Martin v. State*, 200 S.W.3d 635, 639 (Tex. Crim. App. 2006). This requirement includes jurisdictional elements. *Id.* In *Martin*, the court of criminal appeals addressed whether a jury charge must instruct the jury to find the jurisdictional element of two prior DWI convictions was satisfied by a defendant's formal written stipulation to the two prior DWI convictions. *Id.* at 637. The court explained that, although a defendant's stipulation to DWI enhancements obviates the need for evidentiary proof of the element, the jury still must be instructed on all the law concerning a felony DWI offense. *Id.* Specifically, the jury charge should include (1) some reference to the jurisdictional element of two prior DWI convictions, and (2) some reference to the defendant's stipulation and its legal effect of establishing the jurisdictional element. *Id.* at 640–41. The court noted that there is no one

7

correct manner to instruct the jury and that the court "may give whatever other limiting instructions are appropriate under the circumstances." *Id.* at 639.

Several courts have applied *Martin*'s charge analysis concerning the use of stipulations of prior DWI convictions in the felony DWI content to charges concerning the use of stipulations of prior convictions in the repeat assault-family violence context. *See Davila v. State*, 346 S.W.3d 587, 591 (Tex. App.—El Paso 2009, no pet.); *Sheppard v. State*, 5 S.W.3d 338, 340 (Tex. App.—Texarkana 1999, no pet.) (treating prior conviction for family violence offense as an essential element of the felony assault offense). *But see State v. Cagle*, 77 S.W.3d 344, 346 n.2 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (treating prior family violence conviction requirement as an enhancement provision rather than an essential element of the felony charge); *see also Zavala v. State*, No. 03-05-00051-CR, 2007 WL 135979, at *1 n.2 (Tex. App.—Austin Jan. 22, 2007, no pet.) (mem. op., not designated for publication) (recognizing the split between *Sheppard* and *Cagle*).

The State does not dispute that Bishop's prior assault-family violence conviction was a jurisdictional element, not a sentencing enhancement, and that, consequently, *Martin* applies to require a jury charge regarding Bishop's stipulation to his prior assault-family violence conviction. *See* 200 S.W.3d at 639. However, the State argues that *Martin* does not require the trial court to sua sponte include a limiting instruction in the jury charge.

8

*Martin* states that at least one approved method of charging the jury on a stipulation "would include" a limiting instruction. *See id.* *Martin* does not, however, expressly require a limiting instruction regarding a stipulation in all cases. *See id.*; *see also Grisby v. State*, No. 05-08-01351-CR, 2009 WL 2274101, at *1 (Tex. App.—Dallas July 30, 2009, no pet.) (not designated for publication) (so stating). Generally, limiting instructions need not be included in the charge when a defendant fails to request an instruction when the offensive evidence is admitted. *See Hammock v. State*, 46 S.W.3d 889, 895 (Tex. Crim. App. 2001).

Here, however, we need not decide whether the trial court erred by not sua sponte giving a limiting instruction because the record reflects that, even assuming error, Bishop was not egregiously harmed. Because Bishop did not object to the charge error, we reverse only for egregious harm. *See Almanza*, 686 S.W.2d at 171; *see also* Tex. Code Crim. Proc. Ann. art. 36.19; *Hutch*, 922 S.W.2d at 171.

In determining whether egregious harm exists, we note that without a limiting instruction in the charge on Bishop's stipulation, a danger exists the jury might consider Bishop's prior conviction as evidence of his guilt of the charged assault in this case. However, as the Dallas court of appeals pointed out in *Grisby*,

> [A]ppellant arguably also could have benefitted from the defect in the charge. Specifically, the trial court's failure to instruct on the stipulation both reduced the number of references to [his] prior

9

> convictions, but also permitted the jury to acquit [him] if the jury was not convinced beyond a reasonable doubt about the prior convictions.

2009 WL 2274101, at *2.

Regarding the harm in light of the state of the evidence, Bishop argues that the issue of whether he assaulted Tammy was contested at trial because, prior to Bishop's trial, Tammy indicated her desire not to press charges, filled out an affidavit of nonprosecution, and told Bishop's attorney that Bishop had not touched her. However, evidence at trial showed that Tammy was scared to testify against Bishop for fear of what he would do if he was not convicted. On the day of trial, Tammy told an assault-family violence intervention specialist with the Denton County District Attorney's office that she did not want to "be the one that puts [Bishop] away," that she was scared for her life, and that the actions for which Bishop was on trial were "nothing compared to what usually happens." Tammy testified that she and Bishop had gotten into an argument, that he had grabbed her arms, that he had put his hands on her neck, but that she could not remember if he had choked her because "it was so fast." Tammy's brother Billy, her sister, and Officer Luce all testified that Tammy had told them on the day of the incident that Bishop had choked her, and they all testified that they had seen red marks on her neck.

Considering the harm in light of the argument of counsel, the record reveals that the State explained the proper use of Bishop's prior criminal history during voir dire:

10

The only issue . . . that is in front of the jury at the guilt phase of the trial is did [the State] prove these things beyond a reasonable doubt, yes or no? That's why in the guilt phase of the trial, it is very, very rare for a jury to get to know anything about a Defendant's prior criminal history. Usually you wouldn't know anything about the Defendant's prior criminal history.

Assault[-]family violence is one exception. DWI is another one, okay? We have certain crimes that are what's called enhanceable [sic], meaning they might start off as misdemeanors, but then if you get convicted and do it again, at some point you graduate from a misdemeanor to a felony. Everybody with me?

DWI is a great example of that. Your first DWI is a misdemeanor, your second DWI is a misdemeanor, No. 3 is a third-degree felony. . . . You have to be convicted on the first two before you pick up a felony. You graduate up. Everybody with me?

Assault[-]family violence is the same way, the only thing is you only need one prior. If you have one prior conviction for assault[-]family violence and you commit another assault[-]family[] violence, the next one is a third-degree felony.

. . . .

. . .[T]here are some very important rules that go along with y'all getting to know that the person in front of you has a conviction for a prior offense. During the guilt phase of the trial, the jury absolutely cannot consider the prior as evidence of guilt on this one, okay? Period, the end. You cannot, as a juror, make the leap of, well, he did it before, he must have done it. Can't do that.

. . . .

. . . At punishment, you can consider that prior for all purposes, you can do anything you want with it.

At the punishment phase is usually when you would find out everything with somebody's criminal history, whether they have a bunch or have none or whatever. But you can't consider that prior for any purposes other than jurisdictional purposes until that punishment phase. Does that make sense?

11

The State asked the potential jurors whether they could not consider the prior conviction as evidence of guilt, identified several potential jurors who would not be able to set aside the prior conviction in determining guilt, and obtained the remaining potential jurors' agreement that they would be able to set that conviction aside.

During closing arguments, the State explained the stipulation to the jury:

> Number one, for this to be a felony, there has to be a prior conviction for family violence. State's Exhibit No. 11, right here, so that's what this is. Y'all -- I don't know if it's been introduced into evidence, it's the stipulation showing he is the same Steven Bishop that was convicted in that prior that he pled true to, when we read the indictment to y'all at the beginning of the trial this morning.
>
> So that part is done. It's true, it's been pled to, it's been stipulated to.

And defense counsel in his closing argument reminded the jurors about their agreement not to consider Bishop's prior assault conviction:

> Now, you all, under oath during jury selection, stated that you would set that [prior conviction] aside, that you would look at the evidence . . . that's actually before you. So I will take you at your word that you will follow the law and take a look at this case.
>
> We're here because of a prior assault that [Bishop] pled true to, that he was convicted. But that was the DA's discretion of how to file this suit. They could have alleged a choking, that's enough to get us here in felony court. They didn't do that. They took the long way around to prove up the other one, that way you would see it.
>
> But you're here, and you said you would follow the law. That's what you need to do.

Reviewing the record as a whole, considering any harm in light of the entire jury charge, the state of the evidence, the argument of counsel, and any

12

other relevant information, we hold that, even assuming that the trial court erred by not sua sponte including in the jury charge a limiting instruction regarding Bishop's stipulation, Bishop was not egregiously harmed. *See Hutch*, 922 S.W.2d at 172–74; *Almanza*, 686 S.W.2d at 171. We overrule Bishop's second point and, consequently, overrule his first point, alleging only error, as moot.

### V. ERROR IN PUNISHMENT CHARGE ON PAROLE LAW DID NOT CAUSE EGREGIOUS HARM

In his third and fourth points, Bishop argues that the trial court erred by giving the jury an incorrect instruction on parole law and that, although he did not object to the jury charge error, he suffered egregious harm from this error.

Section 4 of the Texas Code of Criminal Procedure article 37.07 requires the trial court to provide the jury with one of three instructions, depending on the type of offense, regarding parole eligibility in noncapital cases. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 4 (West Supp. 2011). Section 4(b) provides in part that in the penalty phase of a felony punishable as a first-degree felony when a prior conviction has been alleged as an enhancement as provided by penal code section 12.42(d), the jury charge on punishment shall include the following instruction:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served plus any good conduct time earned equals *one-fourth of the sentence imposed or 15 years, whichever is less.* Eligibility for parole does not guarantee that parole will be granted.

13

*Id.* art. 37.07, § 4(b) (emphasis added). Section 4(c) provides in part that in the penalty phase of a felony punishable as a second or third-degree felony when a prior conviction has been alleged as an enhancement as provided by penal code section 12.42(d), the jury charge on punishment shall include the following instruction:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served plus any good conduct time earned equals *one-fourth of the sentence imposed*. Eligibility for parole does not guarantee that parole will be granted. [Emphasis added.]

*See id.* art. 37.07, § 4(c). The State admits that section 4(b) was applicable here and that the jury charge erroneously gave the section 4(c) instruction, thus erroneously omitting the words "or 15 years, whichever is less" from the parole-eligibility instruction. Although conceding error, the State argues that Bishop was not egregiously harmed by this error.

The incorrect parole instruction misinformed the jury that the one-fourth-of-the-sentence-imposed equation applied to determine Bishop's parole eligibility date for any sentence that the jury could give—between the minimum of twenty-five years and the maximum of ninety-nine years or life. Under the correct parole law, however, the one-fourth-of-the-sentence-imposed equation applies only when the sentence is less than fifteen years. *See id.* art. 37.07, § 4(b). One-fourth of sixty is fifteen; thus, under section 4(b), any sentence of sixty years or more would result in the same parole-eligibility date—the date that the actual

14

time served plus any good conduct time earned equaled fifteen years. *See id.* art. 37.07, § 4(b). The jury gave Bishop an eighty-year sentence. Thus, under the erroneous jury charge given, the jury was mistakenly led to believe that Bishop would not be eligible for parole until his actual time served plus any good conduct time earned equaled one fourth of the eighty year sentence, or twenty years; but under the correct parole law, Bishop will become eligible for parole five years *earlier*—when his actual time served plus any good conduct time earned equals fifteen years. *See id.* art. 37.07, § 4(b)–(c). In fact, under the correct parole law, Bishop would be eligible for parole in fifteen years if he received any sentence between sixty and the maximum ninety-nine years or life.

One possible result of the incorrect instruction is that the jury may have imposed a longer sentence on the mistaken belief that it would extend Bishop's parole-eligibility date. The argument then becomes had the jury received the correct parole-law instruction, it may have assessed a lesser sentence of sixty to seventy-nine years, any of which would have resulted in the same parole-eligibility date. But this is only theoretical, not actual, harm. *See Almanza*, 686 S.W.2d at 174; *Hooper v. State*, 255 S.W.3d 262, 272 (Tex. App.—Waco 2008, pet. ref'd) ("acknowledg[ing] by speculation that the jury may have calculated that Hooper would have to serve seven and one-half years before he could be released" but stating that "such speculation leads only to insufficient theoretical harm, rather than actual harm"). On appeal, Bishop points out comments made during voir dire by potential jurors to show that "the application of parole law was

15

a concern among the potential jurors." The following discussion occurred during voir dire:

> POTENTIAL JUROR: . . . [B]ut what is life? Life isn't life. Life is, like, 30 years.
>
> [The State]: Again, there's no way to accurately predict how long somebody has to sit, but anything north of 60 is functionally the same. There's no 60, 70, 80, 90, life, in terms of parole eligibility all those numbers are the same.
>
> POTENTIAL JUROR: If somebody got life and never got paroled, would they ever get out of prison?
>
> [The State]: No, the only time we have somebody sentenced to prison -- murder without parole, capital murder there's only two punishments, death and life without parole, for any other crime than capital murder.
>
> POTENTIAL JUROR: What's life?
>
> [The State]: You can consider the existence of the law is quarter time, but you cannot go beyond that, how much time is somebody supposed to sit.

However, this exchange during voir dire does not demonstrate that the jury based its sentence on parole eligibility. Moreover, the jury charge contained the standard curative language admonishing the jury not to consider the extent to which parole law might be applied to Bishop, and there was no indication that the jury did not follow those instructions.[3] *See* Tex. Code Crim. Proc. Ann. art.

---

[3]The jury charge instructed,

> It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

37.07, § 4(b); *Igo v. State*, 210 S.W.3d 645, 647 (Tex. Crim. App. 2006) (considering fact that standard curative language was given as mitigating against finding egregious harm based on erroneous parole law instruction); *see also Waters v. State*, 330 S.W.3d 368, 374 (Tex. App.—Fort Worth 2010, pet. ref'd) (noting that juries cannot consider when a defendant might be *awarded* parole but can properly determine how long a term it wishes a defendant to serve before that defendant may become *eligible* for parole).

Considering the state of the evidence relating to punishment, the State presented evidence of Bishop's multiple prior convictions, including two for DWI, one for felony DWI, one for possession of marijuana, one for driving with a suspended driver's license, one for a stolen check, one for felony possession of methamphetamine, and five for assaults on either his former girlfriends or wife. Specifically regarding the prior assaults, the State presented evidence of a 1997 conviction for assault on his then-girlfriend by striking her mouth with a beer bottle; a 1998 conviction for assault on his then-wife for grabbing, pushing, or shoving her; and two 2005 convictions for assault on his then-girlfriend Nicole Day. Day testified that Bishop had physically abused her several times a week

---

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

*See* Tex. Code Crim. Proc. Ann. art. 37.07, § 4(b).

during their eighteen-month relationship; that he would wake her up by choking her or picking her up by her throat if she did not hear the alarm clock, get up, and make him breakfast; and that "his form of abuse is by taking your air away." Tammy also testified at punishment and explained that Bishop had assaulted her on many occasions and that he would typically choke her once or twice a week during their year-and-a-half relationship. The jury also heard about Bishop's drug and alcohol abuse and his various parole violations.

Bishop makes much of the State's closing arguments, impliedly encouraging the jury to impose a life sentence to stop Bishop before he harmed another person, but the State never mentioned parole law in its closing argument. The jury ultimately assessed a punishment less than the maximum allowed under the law. *See Shavers v. State*, 985 S.W.2d 284, 292 (Tex. App.—Beaumont 1999, pet. ref'd) (considering assessment of less than maximum punishment as mitigating factor in egregious harm analysis of parole-law-instruction error).

Considering the record as a whole, the entire jury charge, the state of the evidence against Bishop, the arguments of counsel, and voir dire, we hold that Bishop was not egregiously harmed by the omission of the words "or 15 years, whichever is less" in the parole law jury instruction. We overrule Bishop's fourth point and, consequently, overrule his third point, alleging only error, as moot.

## VI. CONCLUSION

Having overruled Bishop's four points, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: January 19, 2012