**Opinion filed April 20, 2023**



## In The

# Eleventh Court of Appeals

_____

## No. 11-21-00051-CR

_____

## ANDREW TIMOTHY MARTINEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 14498-D**

## M E M O R A N D U M   O P I N I O N

A jury convicted Appellant, Andrew Timothy Martinez, of the third-degree felony offense of possession of a controlled substance—namely, methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.115(c), .102(6) (West Supp. 2022). The indictment included two enhancement allegations which, if found to be "true," would increase the punishment range for the convicted offense to habitual offender status. *See* TEX. PENAL CODE ANN. § 12.42(d) (West 2019). Based on Appellant's

pleas of "true" to the enhancements, the jury found both enhancement allegations to be "true" and assessed Appellant's punishment at forty-seven and one-half years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. The trial court sentenced Appellant accordingly.

In a single issue, Appellant complains that the trial court erred when it submitted in its punishment charge an incorrect and incomplete parole law instruction that deviated from the current and applicable statutory language.[1] *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(b) (West Supp. 2022). Specifically, Appellant contends that the complained-of instruction included repealed, "misworded" language that erroneously informed the jury that the length of his incarceration, rather than his *parole eligibility*, could be affected by the amount of "good conduct time" awarded to him by prison authorities. Appellant asserts that a new trial should be granted because he was egregiously harmed by the trial court's error. We affirm.[2]

---

[1]Appellant's first appointed appellate counsel submitted an *Anders* brief and filed a motion to withdraw. *See Anders v. California*, 386 U.S. 738 (1967). Following the procedures set forth in *Anders*, *Kelly v. State*, 436 S.W.3d 313 (Tex. Crim. App. 2014), and *In re Schulman*, 252 S.W.3d 403 (Tex. Crim. App. 2008), we independently reviewed the record and concluded that this appeal was not particularly amenable to disposition under *Anders*. We granted appellate counsel's motion to withdraw, abated this appeal, and remanded this cause to the trial court with instructions to appoint other appellate counsel. New appellate counsel was directed to file a brief on the merits and address any substantive issues that appellate counsel deemed to be arguable. This appeal was reinstated after the trial court appointed new appellate counsel.

[2]We and several of our sister courts of appeals have addressed the question of whether a defendant suffered egregious harm when the trial court included in its punishment charge the repealed "good conduct time" language previously found in Article 37.07, Section 4(a). We and our sister courts uniformly held that the record in each case on appeal did not support a finding of egregious harm. *See, e.g.*, *Ritchey v. State*, No. 11-20-00035-CR, 2022 WL 3649433 (Tex. App.—Eastland Aug. 25, 2022, no pet.) (mem. op., not designated for publication); *Alaniz v. State*, 648 S.W.3d 657 (Tex. App.—Eastland 2022, no pet.); *West v. State*, No. 10-20-00087-CR, 2022 WL 1105645 (Tex. App.—Waco April 13, 2022, no pet.) (mem. op., not designated for publication); *Jackson v. State*, No. 03-20-00085-CR, 2022 WL 257451 (Tex. App.—Austin Jan. 28, 2022, pet. ref'd) (mem. op., not designated for publication); *Lewis v. State*, No. 09-21-00082-CR, 2021 WL 6129129 (Tex. App.—Beaumont Dec. 29, 2021, no pet.) (mem. op., not designated for publication); *Holiness v. State*, No. 06-21-00038-CR, 2021 WL 4483519 (Tex. App.—Texarkana Oct. 1, 2021, pet. ref'd) (mem. op., not designated for publication); *Addison v. State*, No. 05-18-01263-CR,

## I. *Factual Background*

On January 18, 2019, Appellant was a passenger in a tan SUV driven by David Cortinez. Sergeant Randy Brown of the Abilene Police Department observed the SUV leave a residence that law enforcement was monitoring because of suspected drug activity. Sergeant Brown followed the SUV and initiated a traffic stop because he noticed that one of the SUV's brake lights was not illuminated. As he spoke to Cortinez, Sergeant Brown smelled the odor of alcohol emanating from inside the SUV. After Appellant and Cortinez produced proof of identification, Sergeant Brown requested a canine unit. Officer Katie Welch arrived with her canine approximately five minutes later. The canine alerted on the SUV, and Appellant and Cortinez were searched.

As a result of the searches, a small baggie containing what appeared to be methamphetamine was found in Appellant's front, left pocket. Appellant was not arrested at that time because a field test performed on the substance found in the baggie was inconclusive. However, subsequent chemical testing and analysis confirmed that the substance retrieved from Appellant's pocket was methamphetamine; the aggregate weight of the tested substance was 1.3 grams.

Appellant was indicted and later convicted of the offense of possession of a controlled substance, a third-degree felony. During the punishment phase, Officer Tim Cox testified about an event that occurred on December 1, 2020. On that date, Officer Cox observed a vehicle fail to signal properly; the vehicle was also traveling in excess of the posted speed limit. The vehicle was driven by Appellant; Cortinez was a passenger.

---

2020 WL 4251068 (Tex. App.—Dallas July 24, 2020, no pet.) (mem. op., not designated for publication); *Guerra v. State*, No. 06-19-00239-CR, 2020 WL 3634390 (Tex. App.—Texarkana July 6, 2020, pet. ref'd) (mem. op., not designated for publication).

Because of his observations, Officer Cox initiated a traffic stop. Based on suspicions that he developed during the traffic stop, Officer Cox used his canine to perform an open-air sniff around Appellant's vehicle. The canine alerted on Appellant's vehicle, and Officer Cox thereafter searched the vehicle. During the search, Officer Cox discovered a bank bag under the front passenger seat that contained, what he believed to be, methamphetamine. Chemical testing and analysis confirmed that the substance that Officer Cox discovered in the bank bag was methamphetamine with an aggregate weight of 23.1 grams.

Appellant's mother and brother testified on Appellant's behalf at the punishment phase. Both stated that Appellant had struggled with medical issues and drug addiction. Although Appellant's mother claimed to be unaware of Appellant's seven prior DWI convictions, his brother was aware of Appellant's prior criminal history, which included the felony convictions that the State alleged in the indictment for enhancement purposes.

## II. *Analysis*

### A. *Standard of Review – Charge Error*

Appellate review of alleged charge error is a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)). First, we must determine whether charge error exists. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015) (citing *Kirsch*, 357 S.W.3d at 649). Second, if error does exist, we must then conduct a harm analysis to determine whether the error resulted in sufficient harm to require reversal. *Id.*; *Phillips v. State*, 463 S.W.3d 59, 64–65 (Tex. Crim. App. 2015); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Ybarra v. State*, 621 S.W.3d 371, 384 (Tex. App.—Eastland 2021, pet. ref'd).

Although "the jury is the exclusive judge of the facts," it is "bound to receive the law from the court and be governed thereby." CRIM. PROC. art. 36.13 (West

4

2007). The purpose of the trial court's charge is to "inform the jury of the applicable law and guide them in its application to the case." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) (quoting *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). Charge error stems from the denial of a defendant's right to have the trial court provide the jury with instructions that correctly set forth the "law applicable to the case." *Bell v. State*, 635 S.W.3d 641, 645 (Tex. Crim. App. 2021) (quoting CRIM. PROC. art. 36.14). Because the trial court is obligated to correctly instruct the jury on the law applicable to the case, it is ultimately responsible for the accuracy of its charge and the accompanying instructions. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018) (citing *Delgado*, 235 S.W.3d at 249). Therefore, when the charge is inaccurate, the trial court errs, and the error is subject to a harm analysis. *See Bell*, 635 S.W.3d at 645.

B. *Parole Law Instruction – Article 37.07, Section 4(b)*

Article 37.07 of the Texas Code of Criminal Procedure sets out the parole law instructions to be included in the trial court's punishment charge. *See* CRIM. PROC. art. 37.07, § 4(a)–(c). With the exception of certain offenses or affirmative findings that are not applicable here, the specific parole law instruction to be submitted is determined by either (1) the degree of felony for which the defendant has been convicted at trial or (2) the degree of felony for which the convicted offense is "punishable." *Id*. In this case, the jury found both enhancement allegations to be "true"; therefore, the jury was required to assess Appellant's punishment within the statutory range for a habitual offender. CRIM. PROC. art. 37.07, § 4(b); PENAL § 12.42(d).

In 2019, the Texas legislature amended Article 37.07, Section 4(b) to provide that "good conduct time," if awarded to a defendant by prison authorities, could result in a defendant earning *early parole eligibility*, rather than a reduction in the length of a defendant's period of incarceration, if the punishment to be assessed

against that defendant is to be determined by and falls within the habitual offender range. *See* Act of May 15, 2019, 86th Leg., R.S., ch. 260, § 1, 2019 Tex. Gen. Laws 446, 446–448 (codified at CRIM. PROC. art. 37.07, § 4(b)). The 2019 amendment to Section 4(b) applies to any defendant who is *sentenced* on or after September 1, 2019, irrespective of when the charged offense was committed. *See id.* §§ 2–3. Because Appellant's sentence was imposed on March 30, 2021, the amended and revised parole law instruction in Section 4(b) would apply.

Appellant contends, and the State concedes, that the trial court was required to submit the revised Section 4(b) parole law instruction in its punishment charge. *See* CRIM. PROC. art. 37.07, § 4(b). The trial court failed to do so. Rather, the trial court submitted the pre-2019 Section 4(b) instruction that included the repealed and now-removed "time off the period of incarceration" phrase and omitted the required "early parole eligibility" language. The revised Section 4(b) instruction that should have been submitted reads as follows:

> Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn *early parole eligibility* through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

(Emphasis added). The trial court must follow and only submit the language set out in the controlling statute verbatim; no deviation is permitted. *See Luquis v. State*, 72 S.W.3d 355, 363 (Tex. Crim. App. 2002); *see also* CRIM. PROC. art. 37.07, § 4(b) (noting the correct parole law instruction to be given during the punishment phase of a trial in which the jury is to assess the defendant's punishment if the convicted offense is enhanced to habitual offender status). In this case, the trial court erred when it did not submit in its punishment charge the revised parole law instruction noted above as required by Section 4(b).

C.  *Harm Analysis*

Because we have determined that charge error exists, we must now conduct the appropriate harm analysis.  *See Ngo*, 175 S.W.3d at 743.  Here, Appellant's trial counsel failed to object to the submission of the erroneous parole law instruction in the punishment charge; therefore, we review the charge error under the *Almanza* "egregious harm" standard.  *Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).  When, as in this case, the defendant or his trial counsel fails to assert an objection to the trial court's charge, we will reverse only if the error was so egregious and created such harm that the defendant was deprived of a fair and impartial trial.  *Villareal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009).

"Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Villareal*, 453 S.W.3d at 433; *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).  "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'"  *Villareal*, 453 S.W.3d at 433 (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)).  In our egregious harm analysis, we examine the relevant portions of the record to determine whether Appellant suffered actual, as opposed to theoretical, harm as a result of the error.  *See Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016).  Egregious harm is only shown when the error "created such harm that [the appellant was deprived of] 'a fair and impartial trial.'"  *Almanza*, 686 S.W.2d at 171.

1.  *Almanza Factors*

The Court of Criminal Appeals in *Almanza* identified the factors that a reviewing court should consider when determining if charge error resulted in egregious harm.  *See id.* at 171.  They are: (1) the charge itself; (2) the state of the

evidence, including the contested issues and the weight of the probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the trial record as a whole. *Villareal*, 453 S.W.3d at 433 (citing *Almanza*, 686 S.W.2d at 171). These factors guide our harm analysis.

The first *Almanza* factor requires that we review the punishment charge in its entirety. The Court of Criminal Appeals has stated that "the over-all purpose of the [parole] instruction is to inform jurors of these concepts [of good conduct time or parole eligibility] as a general proposition, but to prohibit the jury from using its notions of [those concepts] in any calculus in assessing the appropriate punishment." *Luquis*, 72 S.W.3d at 360. Nevertheless, charge error may be ameliorated by the inclusion of other instructions in the same charge.

Here, the punishment charge informed the jury of the applicable range of punishment to be considered by the jury and further instructed the jury that, in assessing Appellant's punishment, the jury was *not* to consider (1) the extent to which "good conduct time" could be awarded to or forfeited by Appellant or (2) the manner in which the parole law could be applicable to him. The jury was also instructed that Appellant's *eligibility for parole* did not assure that parole would be granted. Unless the record indicates to the contrary, and in the case before us it does not, we presume that the jury followed the trial court's instructions. *See Taylor v. State*, 332 S.W.3d 483, 492 (Tex. Crim. App. 2011); *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005); *Luquis*, 72 S.W.3d at 366 (citing *Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996)); *Smith v. State*, 631 S.W.3d 484, 500 (Tex. App.—Eastland 2021, no pet.).

Because we may presume that the jury, in assessing Appellant's punishment, did not consider how "good conduct time," Appellant's *parole eligibility*, or the parole law might affect or be applied to Appellant, and because it was unlikely that the punishment charge, when considered in its entirety, would either confuse,

influence, or mislead the jury in that regard, we conclude that the first *Almanza* factor does not weigh in favor of finding egregious harm. *See, e.g.*, *Guerra v. State*, No. 06-19-00239-CR, 2020 WL 3634390, at *4 (Tex. App.—Texarkana July 6, 2020, pet. ref'd) (mem. op., not designated for publication).

The second *Almanza* factor focuses on the evidence presented at trial. On appeal, Appellant does not contend that the evidence is insufficient to support his conviction. Instead, Appellant focuses on whether the charge error improperly affected or influenced the jury's punishment recommendation.

Because Appellant is a habitual offender, the applicable range of punishment that the jury was to consider in assessing Appellant's punishment is either imprisonment for life or for a term of not less than twenty-five years but no more than ninety-nine years. PENAL § 12.42(d). In its summations, the State did not request a specific sentence recommendation from the jury; the prosecutor only stated that the jury should consider the "fuller range of punishment" and that Appellant's punishment should be no less than "30" years "because 30 didn't stop [Appellant] last time."

As we have said, the jury recommended a sentence of forty-seven and one-half years' imprisonment. While it is true that the jury's sentence recommendation falls somewhat closer to the lower end of the punishment range for a habitual offender, the punishment evidence was nonetheless compelling. *See Igo v. State*, 210 S.W.3d 645, 647 (Tex. Crim. App. 2006). Appellant has seven DWI convictions. Appellant has thrice been convicted of felony offenses (felony DWI in 2000, possession of a prohibited substance in a penal institution in 2002, and felony DWI in 2010). Further, Appellant was on parole when he committed (1) the offense for which he was convicted in this case and (2) the subsequent drug offense for which he was arrested on December 1, 2020.

The punishment evidence presented by the State is indicative of Appellant's inability to rehabilitate and his proclivity to reoffend. Considering the entire record, the jury could have reasonably concluded that a forty-seven and one-half year sentence was an appropriate punishment for Appellant's conduct. Therefore, we conclude that the state of the evidence does not weigh in favor of finding egregious harm.

The third *Almanza* factor pertains to the arguments of trial counsel. In weighing this factor, we must determine whether any statements made by the State, Appellant's trial counsel, or the trial court exacerbated or ameliorated the charge error. *Arrington v. State*, 451 S.W.3d 834, 844 (Tex. Crim. App. 2015).

Contrary to Appellant's contention, the arguments of trial counsel did not exacerbate the charge error. The State mentioned the term "parole" three times during its opening argument and once during its rebuttal argument. In doing so, the State did not elaborate on or discuss the purpose of parole or the manner in which it would apply to or affect Appellant as a result of his conviction. Nor did the State ask the jury to consider when, or if, Appellant would be paroled, or be eligible for parole, for the convicted offense. Rather, considering the context, the State attempted to persuade the jury to assess a sentence of no less than thirty years because of Appellant's extensive criminal history and repetitive conduct. Moreover, Appellant's trial counsel only referred to "parole" once in her final argument while imploring the jury to assess a minimum sentence. As for "good conduct time," neither trial counsel mentioned or alluded to in their summations the subject of "good conduct time" or how Appellant's term of incarceration might be affected by any award of "good conduct time" that he could receive from prison authorities. *See Luquis*, 72 S.W.3d at 367; *Atkinson v. State*, 107 S.W.3d 856, 860 (Tex. App.—Dallas 2003, no pet.). As such, we conclude that this factor does not weigh in favor of finding egregious harm.

Finally, the fourth *Almanza* "catch-all" factor requires that we consider any other relevant information in the record that would assist in our determination of whether Appellant suffered egregious harm as a result of the charge error. *See Gelinas v. State*, 398 S.W.3d 703, 707 (Tex. Crim. App. 2013); *Almanza*, 686 S.W.2d at 171.

Appellant argues that the length of the jury's punishment deliberations and the unique sentence that the jury recommended suggests that the jury improperly considered and calculated how the parole law and "good conduct time" applied to Appellant. This argument borders on speculation and finds no support in the record. The record before us shows that, during its punishment deliberations, the jury never inquired of or submitted any note or other form of communication to the trial court regarding "good conduct time," *early parole eligibility*, the parole law in general, or how either might apply to or affect Appellant. *See Lopez v. State*, 314 S.W.3d 70, 73 (Tex. App.—Waco 2010, no pet.); *Shavers v. State*, 985 S.W.2d 284, 292 (Tex. App.—Beaumont 1999, pet. ref'd). Despite this, Appellant refers to no evidence in the record, and we have found none, that shows or suggests that the jury (1) was influenced, confused, or misled by the instructions in the punishment charge or (2) even considered or mentioned the application of *early parole eligibility*, "good conduct time," or the parole law during its deliberations. *See Hooper v. State*, 255 S.W.3d 262, 272–73 (Tex. App.—Waco 2008, pet. ref'd). Further, Appellant does not point to, nor have we found, other information in the record that would assist in our egregious-harm determination.

Because there is no other relevant information in the record before us that shows or suggests that the jury's punishment recommendation was influenced or affected by the charge error, i.e., the absence of the required "*early parole eligibility*" language in the instruction, we conclude that the fourth *Almanza* factor does not weigh in favor of finding egregious harm.

We hold that the trial court erred when it submitted in its punishment charge the pre-2019 Section 4(b) instruction that included the abrogated "time off the period of incarceration" language rather than the required "early parole eligibility" language.  However, we conclude that this error did not result in a level of egregious harm such that Appellant was deprived of a fair and impartial trial.  Accordingly, we overrule Appellant's sole issue on appeal.

III.  *This Court's Ruling*

We affirm the judgment of the trial court.

W. STACY TROTTER

JUSTICE

April 20, 2023

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

12
